**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN CHRISTOPHER LAUTO,<br><br>    Plaintiff,<br><br>v.<br><br>DOVER PUBLIC SCHOOL DISTRICT, DOVER BOARD OF EDUCATION, and DOVER HIGH SCHOOL,<br><br>    Defendants. | Civil Action No. 21-18246 (SDW)(ESK)<br><br>**OPINION**<br><br>August 24, 2022 |

**WIGENTON**, District Judge.

Before this Court is Defendants Dover Public School District ("DSD"), Dover Board of Education ("BOE"), and Dover High School's ("DHS") (collectively, "Defendants") Motion to Dismiss (D.E. 9) Plaintiff Steven Christopher Lauto's ("Plaintiff") Amended Complaint (D.E. 6 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. §§ 1441(a) and 1445(a). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated below, Defendants' Motion to Dismiss is **DENIED**.

I.   **BACKGROUND AND FACTUAL HISTORY**

Plaintiff has been employed as a teacher with DSD and DHS for twenty-two (22) years, as well as an accountant for DHS for nineteen (19) years. (Compl. at ¶¶ 9, 25, 123.) In or about April 2016, Plaintiff was informed by one of his students that a student was engaging in sexual activities with a DHS guidance counselor, Ms. Deana Palmieri. (Compl. at ¶ 27.) Thereafter,

Plaintiff immediately reported the allegations to the New Jersey Teachers Union–NJEA ("NJEA"); the Principal and Vice Principal of DHS; the Superintendent of DPS; and Dover Police. (Compl. at ¶¶ 28–35.) Following the reporting of Ms. Palmieri, Plaintiff alleges that he was subjected to "ongoing targeting and harassment" from Defendants from 2016 through 2021. (*Id.* at ¶¶ 45–46, 161, 159–161.)

In October 2018, Principal Robert Franks ("Principal Franks") began an investigation of Plaintiff regarding alleged inappropriate discussions and sexual misconduct that Plaintiff had with students. (*Id.* at ¶¶ 38–44.) Defendants did not inform Plaintiff that an investigation was being conducted or that allegations were made against him. (*Id.* at ¶¶ 38–44.) Defendants conducted the investigations randomly, questioned numerous students, and implemented "ad hoc work requirements designed to target and punish Plaintiff." (*Id.* at ¶ 47.) As a result of the incidents that transpired from 2016 through 2018, Plaintiff was diagnosed with Post-Traumatic Stress Syndrome ("PTSS") by a licensed therapist.[1] (*Id.* at ¶¶ 55, 59.)

Plaintiff contends that he was provided fewer due process protections than his similarly situated female colleagues who "were accused of making actual physical contact and/or engaging sexually with students." (*Id.* at ¶¶ 48–50.) Specifically, Plaintiff's similarly situated female colleagues "accused of making actual physical contact and/or engaging sexually with students" were given the opportunity "to defend themselves, confront their accusers, and circumvent ongoing punishment." (*Id.* at ¶ 50.) For example, in December 2017, Plaintiff alleges that a female DHS gym teacher, accused of inappropriate sexual misconduct with male students, was given the opportunity to defend herself, confront her accuser, and was not placed on administrative leave pending an investigation. (*Id.* at ¶¶ 52–54.)

---

[1] Since 2017, Plaintiff alleges he consistently received psychological therapy from his treating therapist for his PTSS on a weekly basis. (*Id.* at ¶ 58.)

2

On February 7, 2020, Plaintiff received a letter from DSD stating that Plaintiff was being placed on immediate paid leave as result of allegations made against him that required DSD to notify the Institutional Abuse Investigation Unit ("IAIU"). (*Id.* at ¶¶ 60–61.) Plaintiff was not given advance notice of the claims made against him, the opportunity to defend himself, or the ability to confront his accusers prior to DSD notifying the IAIU and placing him on immediate paid leave. (*Id.* at ¶¶ 62–63.) After an investigation by the IAIU, Plaintiff received a letter from the IAIU on February 25, 2020, advising that the sexual abuse claims made against him were "unfounded." (*Id.* at ¶¶ 74–75.) However, despite being cleared of the allegations, "Defendants sought additional means of targeting and harassing Plaintiff via an unannounced ad hoc investigation" and "interrogat[ion] [of] thirty-three (33) of Plaintiff's students concerning Plaintiff's alleged inappropriate discussion of sexual topics in his classroom." (*Id.* at ¶ 85.) Defendants did not inform Plaintiff of this secondary investigation. (*Id.* at ¶¶ 69, 85.) On March 5, 2020, DSD concluded the investigation and cleared Plaintiff of any wrongdoing. (*Id.* at ¶ 86.)

On March 12, 2020, Plaintiff received a letter from the Superintendent of DPS, stating that the reinstatement of his employment was going to be discussed by the BOE. (*Id.* at ¶ 91.) Plaintiff contends that "Defendants embarked on a concerted campaign to undermine Plaintiff's reinstatement by seeking out public comments to disrupt Plaintiff's contractual renewal process." (*Id.* at ¶ 98.) Defendants allegedly made comments in connection with the sexual misconduct claims against Plaintiff at BOE meetings and on social media platforms. (*Id.* at ¶¶ 98-115.) Specifically, Plaintiff alleges that BOE member Karol Ruiz created and presided over a social media platform called, Signal, where comments were made against Plaintiff by Defendants and other individuals. (*Id.* at ¶¶ 106–117.)

On June 24, 2020, the Superintendent of DPS advised Plaintiff that the BOE agreed to withhold Plaintiff's employment adjustment increments due to Plaintiff's inappropriate language and discussion of inappropriate topics with students. (*Id.* at ¶ 119.) On June 30, 2020, Plaintiff was informed that his employment as a teacher for the 2020–2021 school year would resume, but his previous employment as an accountant for DHS would not be renewed. (*Id.* at ¶¶ 121–123.) On August 10, 2020, Plaintiff received a letter from the Superintendent of DPS advising that Plaintiff could return to the classroom on two conditions: (1) Plaintiff must submit a mental health examination to determine his fitness for duty because "[Plaintiff has] shown evidence of a deviation from normal health" and (2) Plaintiff must comply with a Corrective Action Plan to be developed by his direct supervisor.[2] (*Id.* at ¶¶ 124–126.) Plaintiff asserts that he is the "first ever" DSD teacher to be placed on a Corrective Action Plan. (*Id.* at ¶ 90.) Plaintiff was suspended from his employment position through October 6, 2020. (*Id.* at ¶ 137.) On December 10, 2020, Plaintiff sent Defendants' legal counsel a demand letter and litigation hold notice setting forth the specific claims against Defendants.[3] (*Id.* at ¶¶ 150-153.) Plaintiff contends that Defendants continued to harass and intimidate Plaintiff with frequent unannounced classroom observations through June 2021. (*Id.* at ¶¶ 137, 158-161.)

On October 8, 2021, Plaintiff filed his original complaint against Defendants.[4] (D.E. 1.) Thereafter, Plaintiff filed a thirteen-count Amended Complaint alleging: hostile work environment

---

[2] In accordance with the Superintendent of DPS' directive, Plaintiff submitted a psychological exam from Dr. Jennifer Butler-Sweeney noting, in pertinent part, that Plaintiff posed no threat to himself, his peers, or the students he teaches and is fit to resume his duties as a teacher. (*Id.* at ¶¶ 134-135.) Plaintiff's treating therapist also submitted an expert report noting that Plaintiff was always sensitive to the work environment created by DSD, and that he was and continues to be deeply impacted by it. (*Id.* at ¶¶ 140-146.)

[3] Neither Plaintiff nor Defendants have provided the December 10, 2020 Demand Letter for this Court's consideration.

[4] Prior to initiating this action, Plaintiff asserts that he filed a charge with the Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue on August 3, 2021. (Compl. at ¶¶ 5–8.)

under Title VII ("Title VII") of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq*. (Count One); retaliation under Title VII (Count Two); sex discrimination and hostile work environment under New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5–12 *et seq.* (Count Three); retaliation under NJLAD (Count Four); violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA") (Count Five); retaliation under ADA (Count Six); disability discrimination under the NJLAD (Count Seven); retaliation under the NJLAD (Count Eight); aider and abettor liability under the NJLAD (Count Nine); tortious interference with contractual relations (Count Ten); defamation (Count Eleven); and civil conspiracy to commit tortious interference with contractual relations (Count Twelve). (D.E. 6.) Defendants now move to dismiss the Amended Complaint. (D.E. 9.) All briefing has been timely submitted. (D.E. 10, 11.)

## II. <u>LEGAL STANDARD</u>

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231. However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III.   DISCUSSION

**A. Counts One and Three (Hostile Work Environment under Title VII and the NJLAD)**

Plaintiff alleges identical hostile work environment claims under both Title VII and the NJLAD. (Compl. at ¶¶ 163–171, 180–188.)

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...." 42 U.S.C. § 2000e–2(a)(1). Similarly, the NJLAD prohibits, *inter alia*, sex-based discrimination in the workplace. N.J. Stat. Ann. § 10:5–12(a). The standard for establishing a hostile work environment sex-based discrimination claim under both Title VII and the NJLAD are substantially similar, and thus, the Court will address both claims simultaneously. *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (applying the same elements to hostile work environment sexual harassment claim under Title VII and NJLAD); *see also Grazioli v. Genuine Parts Co.*, 409 F.Supp. 2d 569, 576 n.10 (D.N.J. 2005) ("Because the hostile work environment analyses for Title VII claims and NJLAD claims are 'strikingly similar' the

Court will analyze both simultaneously") (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)).

To succeed on a hostile work environment claim against an employer, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his or her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) a basis for the employer's liability. *Chambers v. LLMD Associates, LLC*, 2020 WL 4035500, *7 (D.N.J. July 17, 2020) (citing *Moody*, 870 F.3d at 213). "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Moreover, "to allege a hostile work environment claim on sex-based discrimination, a plaintiff must demonstrate that the discriminatory conduct occurred because of his or her sex." *Chambers v. LLMD Associates, LLC*, 2020 WL 4035500, *at 7. However, the discriminatory conduct need not be sexual in nature so long as it occurs because of the victim's sex. *Id.* Rather, "it is 'only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff had been a man she would not have been treated in the same manner.'" *Id*. (quoting *Tomkins v. Public Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1047 n.4 (3d Cir. 1977)).

The hostile work environment standard is an objective one, based on "an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). "Ultimately, '[w]hether an environment is hostile requires looking at the totality of the circumstances including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mammen v. Thomas Jefferson University*, 462

F. Supp. 3d 518, 528 (E.D. Pa. 2020) (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" Title VII or NJLAD violations. *Mammen*, 462 F. Supp. 3d at 528 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). However, even where "many of plaintiff['s] allegations, standing alone, would be insufficient to state a cause of action," the allegations may be sufficient to state a claim when "[v]iewed cumulatively." *Shepard* v. *Hunterdon Development Center*, 174 N.J. 1, 25–26 (N.J. 2002).

Here, Plaintiff's claims for hostile work environment under Title VII and the NJLAD are sufficiently pled. Plaintiff identifies a variety of allegedly discriminatory incidents that occurred from 2016 through 2021. (*See generally* Compl.) The Complaint alleges, *inter alia*, that Plaintiff was provided fewer due process protections than his similarly situated female colleagues who "were accused of making actual physical contact and/or engaging sexually with students." (*Id.* at ¶¶ 48–50, 52–54.) The Complaint sets forth that these similarly situated female colleagues were given the opportunity to defend themselves, confront their accusers, and were not placed on immediate paid leave. (*Id.*) Conversely, when Plaintiff was accused of sexual misconduct with students, he was placed on "immediate paid leave" pending an investigation by the IAIU; denied his previous role as an accountant for DHS; subjected to ongoing investigations and classroom observations even after the IAIU determined the claims were unfounded; and required to comply with a Corrective Action Plan before he would be allowed back in the classroom. (*Id.* at ¶¶ 60–61, 85, 121–123, 137, 158–161.) Further, Plaintiff contends that he was the "first ever" DSD teacher to be subjected to an ongoing disciplinary Corrective Action Plan in the school district even though other similarly situated female colleagues had been accused of engaging sexually with students. (*Id.* at ¶ 90.)

The Complaint further alleges that Plaintiff was subjected to harassment from Defendants through ongoing investigations and statements made about Plaintiff at BOE meetings and on social media platforms following the reporting of Ms. Palmieri, which caused him to be diagnosed with PTSS. (*See generally* Compl.) Plaintiff has established that a "reasonable person [could] believe that ... the conditions of employment have been altered and that the working environment [wa]s hostile or abusive." *Shepard* v. *Hunterdon Development Center*, 174 N.J. at 24 (quoting *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 603–04 (N.J. 1993)). Significantly, Defendants do not argue that Plaintiff exhibited a "hypersensitive . . . idiosyncratic response" to the alleged conduct. *See Lehman v. Toys R Us, Inc.*, 132 N.J. at 612–13.[5] Thus, Plaintiff's allegations that he was the only DSD teacher subjected to a disciplinary Corrective Action Plan and given fewer due process protections reinforces his reasonable belief that Defendants' actions had altered the conditions of his employment. (*Id.* at ¶¶ 48–50, 52–54, 90.) Viewed in a light most favorable to Plaintiff, Plaintiff has sufficiently pled that the harassment and discriminatory conduct that occurred was based on his sex. Plaintiff's hostile work environment claims are based on the cumulative effect of the discriminatory conduct alleged.[6] (*Id.* at ¶¶ 48–50, 52–54, 60–61, 85, 90, 121–123, 137, 158–161.) Counts One and Three therefore remain.

---

[5] "A hypersensitive employee might have an idiosyncratic response to conduct that is not, objectively viewed, harassing. Allegations of such non-harassing conduct do not state a claim, even if the idiosyncratic plaintiff perceives her workplace to be hostile, because the complained-of conduct, objectively viewed, is not harassment, and the workplace, objectively viewed, is not hostile." *Lehman v. Toys R Us, Inc.*, 132 N.J. at 612–613.

[6] Plaintiff has sufficiently pled employer liability, as Plaintiff has alleged that Defendants and their administrators committed the harassing and discriminatory conduct. (*See generally* Compl.)

**B. Counts Two, Four, Six, and Eight (Retaliation under Title VII, the ADA, and the NJLAD)**

Plaintiff's claims for retaliation under Title VII, the ADA, and the NJLAD in Counts Two, Four, Six, and Eight of the Amended Complaint against Defendants are sufficiently pled. (Compl. at ¶¶ 173–178, 190–195, 201–203, 209–211.)

Title VII, the ADA, and the NJLAD make it unlawful to retaliate against or intimidate any individual because he or she has opposed any act or practice made unlawful by Title VII, the ADA, or the NJLAD. *See* 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203; N.J. Stat. Ann. § 10:5–12(d). Retaliation claims under Title VII, the ADA, and the NJLAD require that the plaintiff satisfy the same elements. *See Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 126 (D.N.J. April 23, 2020) ("[t]he ADA and NJLAD make it unlawful to retaliate against or intimidate any individual because he or she has opposed any act or practice made unlawful by the ADA or NJLAD"). To prove a prima facie case of retaliation, the plaintiff must demonstrate by a preponderance of the evidence that (1) he engaged in a protected activity; (2) he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Id.*; *see also Moore v. City of Philadelphia,* 461 F.3d 331, 340–41 (3d Cir. 2006).

Here, Defendants do not dispute that Plaintiff was engaged in a protected activity when he reported "alleged sexual abuse by Palmieri in April 2016." (D.E. 9–2 at 16.) Defendants, however, challenge whether Plaintiff sufficiently alleges that he faced an adverse employment action, and that the adverse employment action was causally linked to his protected conduct. (D.E. 9–2 at 16–17.) Specifically, Defendants allege that Plaintiff cannot establish retaliation because of the length of time between Plaintiff's reporting of Ms. Palmieri in 2016 and the adverse actions alleged. (*Id.*) The Court considers a "'broad array of evidence' in determining whether a causal link exists[.]" *LeBoon v. Lancaster Jewish Community Center Assoc.*, 503 F.3d 217, 232 (3d Cir. 2007) (citing

10

*Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 284 (3d Cir. 2000)). "[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct" may be used to raise an inference that a causal link between the protected conduct and retaliatory action exists. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). Plaintiff has adequately pled an adverse action. The Complaint alleges, *inter alia*, that Plaintiff was denied similar due process rights afforded to his similarly situated female colleagues; Plaintiff was denied his previous position as an accountant for DHS; Defendants subjected Plaintiff to ongoing investigations and classroom observations; and Defendants required Plaintiff to comply with a Corrective Action Plan. (Compl. at ¶¶ 48–50, 52–54, 60–61, 85, 121–-123, 137, 158–161.) Plaintiff has also sufficiently pled a causal link between his protected activity and the adverse actions. During the period between his protected activity and the adverse actions, Plaintiff contends he was subjected to ongoing investigations, harassment, and intimidation from Defendants establishing a "pattern of antagonism" following the protected conduct. (*See generally* Compl); *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d at 177. Accordingly, Plaintiff has sufficiently pled claims for retaliation under Title VII, the ADA, and the NJLAD. Counts Two, Four, Six, and Eight therefore remain.

**C. Counts Five and Seven (Disability Discrimination under the ADA and the NJLAD)**

"Disability discrimination claims under the ADA and the NJLAD are analyzed under the same framework." *Stewart v. Cty. of Salem*, 274 F. Supp. 3d 254, 259 (D.N.J. 2017) (citing *Guarneri v. Buckeye Pipe Line Services Co.*, 205 F. Supp. 3d 606, 615 (D.N.J. 2016)). To state a prima facie cause of action for disability discrimination, Plaintiff must show he: (1) was disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) suffered an otherwise adverse employment decision as a result of discrimination. *Id.* (citing *Guarneri*, 205 F. Supp. 3d at 615). Critically,

11

Plaintiff need only "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, Civ. No. 08–207, 2008 WL 2312671, *4 (W.D. Pa. June 4, 2008)). An "adverse employment action" means an action that is "'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Whitehead v. Cty. of Monmouth*, Civ. No. 15–5352, 2015 WL 7776896, at *3 (D.N.J. Dec. 2, 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)).  Moreover, "[b]oth the ADA and NJLAD afford protections to a person who does not have a disability, but is 'perceived as' or 'regarded as' having a disability." *Dennis v. Cty. of Atl. Cty.*, 863 F. Supp. 2d 372, 378 (D.N.J. 2012) (citing 42 U.S.C. § 12102(3)(A), N.J.A.C. 13:13-1.3).

Here, Plaintiff alleges Defendants discriminated against him based on his disability of PTSS.  The Complaint demonstrates that Plaintiff was diagnosed with PTSS and Defendants were aware; was able to otherwise perform his job with or without accommodations for over two decades; was denied an accountant role at DHS that he previously held for nineteen years; and subjected to ongoing harassment.  (Compl. at ¶¶ 47, 85, 121–123, 124–126.)  Further, as a condition of Plaintiff's employment reinstatement, Defendants required Plaintiff to comply with a Corrective Action Plan and complete a mental health examination because "[Plaintiff has] shown evidence of a deviation from normal health." (*Id.* at ¶ 124, 126.)  At this early pleading stage, Plaintiff's allegations regarding disability are sufficient.  Plaintiff's Complaint meets the pleading standard.  Counts Five and Seven therefore remain.

### D. Count Nine (Aider & Abettor Liability under the NJLAD)

In Count Nine, Plaintiff alleges that Defendants and their administrators, namely the Superintendent and Vice Superintendent of DPS, Principal Franks, and BOE members, aided and

12

abetted all of the discriminatory conduct alleged in the Amended Complaint. (Compl. at ¶ 213–216.) Under N.J.S.A. § 10:5-12(e), it is unlawful "for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999). "[I]ndividual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the aiding and abetting mechanism." *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (N.J. 2008). To state a claim for aiding and abetting, a plaintiff must plausibly allege that: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Id.*; *see also Tarr v. Ciasulli*, 181 N.J. 70, 84 (N.J. 2004).

Here, Plaintiff sufficiently pleads a claim for aider and abettor liability. The Complaint alleges, *inter alia*, that the Superintendent of DPS worked with the BOE and agreed to withhold Plaintiff's employment adjustment increments; Plaintiff received notices from Defendants that the reinstatement of his employment was being considered by Defendants; and Defendants sought out "public comments" concerning Plaintiff during Plaintiff's contract renewal process. (Compl. at ¶¶ 91, 98, 119.) As a result of Defendants' actions, Plaintiff's previously held role as an accountant with DHS was not renewed; his employment adjustment increments were withheld; and Plaintiff was subjected to an ongoing Corrective Action Plan as a condition of his employment reinstatement. (Compl. at ¶¶ 91, 119, 124, 126.) Plaintiff has sufficiently asserted that Defendants knowingly engaged in the alleged conduct. Count Nine therefore remains.

13

### E. Counts Ten, Eleven, and Twelve (Tort Claims)

As an initial matter, Defendants argue that Plaintiff's tort claims in Counts Ten, Eleven, and Twelve of the Complaint for tortious interference with contractual relations, defamation, and civil conspiracy to commit tortious interference with contractual relations should be dismissed because Plaintiff has not complied with the notice requirements of the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1–1 et seq. (D.E. 9–2 at 24–30.) "Tort claims against public entities and public employees are governed by the [NJTCA]." *Ingram v. Twp. of Deptford*, 858 F. Supp. 2d 386, 400 (D.N.J. 2012) (quoting *Velez v. City of Jersey City*, 180 N.J. 284, 850 A.2d 1238 (N.J. 2004)). "The NJTCA requires that a notice of claim must be filed with the public entity not later than the ninetieth (90th) day after accrual of the underlying cause of action." *Id.* (citing N.J. Stat. Ann. § 59:8–8(a)). "Failure to file the required notice will result in the dismissal of the Plaintiff's tort claims." *Id.* (citing N.J. Stat. Ann. § 59:8–3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.")). If a court finds that the NJTCA applies, then the plaintiff is required to comply with the notice requirements set forth in the NJTCA. *See, e.g., Masapollo v. Hunt*, No. 15-2270, 2016 WL 5402213, at *2 (D.N.J. Sept. 27, 2016).

Here, it is undisputed that Defendants are public entities and therefore, the notice provisions of the NJTCA apply to Plaintiff's tort claims. However, it would be premature for the Court to make a determination on the sufficiency of Plaintiff's December 10, 2020 Demand Letter in which Plaintiff claims substantially complied with the requirements of the NJTCA because neither Plaintiff nor Defendants have provided the December 10, 2020 Demand Letter for this Court's consideration. (Compl. at ¶¶ 150-154, 156-157.) Without more, this Court cannot decide on the sufficiency of the December 10, 2020 Demand Letter. Viewing all facts in a light most

favorable to Plaintiff, and the burden resting with the Defendants on this motion, there is no basis to deem the letter non-compliant when same has not been provided to the Court for review. In sum, at this juncture, Defendants' challenge to the sufficiency of the December 10, 2020 Demand Letter cannot prevail. As a result, this Court will focus its analysis on whether Plaintiff's tort claims in Counts Ten, Eleven, and Twelve are sufficiently pled.

### i. Count Ten (Tortious Interference with Contractual Relations)

To state a claim for tortious interference with a contractual relationship, the plaintiff must allege 1) a protectable right, i.e., a contract; 2) intentional and malicious interference with the protectable right 3) that causes a loss with resulting damages. *DBA Distribution Services, Inc. v. All Source Freight Solutions, Inc.*, 2012 WL 845929, at *6 (D.N.J. Mar. 13, 2012) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 751-752, 563 A.2d 31 (N.J. 1989)).

Plaintiff's Amended Complaint sufficiently states a claim for tortious interference as to Plaintiff's relationship with DHS. Plaintiff alleges that he served as the accountant at DHS for nineteen years and sought for his position as accountant to be renewed for the 2020 academic year. (Compl. at ¶¶ 121-123.) Plaintiff contends that he had a reasonable expectation of future employment with DHS evidenced by his renewed application for employment as an accountant for DHS. (Compl. at ¶ 218.) Further, Plaintiff contends that "Defendants' actions in informing Dr. McLaughlin's decision to deny Plaintiff [his] role as DHS's accountant was an interference done intentionally[,]" which caused the loss of Plaintiff's employment as an accountant. (Compl. at ¶¶ 219–220.) Indeed, Plaintiff has sufficiently identified contracts or relationships affected by Defendants' alleged misconduct and alleged that Defendants intentionally interfered without justification. (Compl. at ¶¶ 218–222.) Regarding Plaintiff's claim for tortious interference with contractual relations (Count Ten), the motion is denied.

    ii.    **Count Eleven (Defamation)**

To state a claim for defamation under New Jersey law, the plaintiff must allege: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher. *Ross v. Bd. of Educ. Greater Egg Harbor Regional High School Dist.*, 658 F. App'x 97, 100 (3d Cir. 2016) (quoting *DeAngelis v. Hill*, 180 N.J. 1, 13, 847 A.2d 1261 (N.J. 2004)). A defamatory statement is one that is false and injurious to a party's reputation. *Taj Mahal Travel, Inc. v. Delta Airlines Inc.*, 164 F.3d 186, 189 (3d Cir. 1998). A plaintiff must plead "when, where, by which defendants and by what words, written or oral, plaintiff was defamed." *Zoneraich v. Overlook Hosp.*, 212 N.J.Super. 83, 514 A.2d 53, 62 (N.J. Super. Ct. App. Div. 1991). Complaints that vaguely allege that defamatory statements were made to "third parties" are insufficient. *See Foy v. Wakefern Food Corp.*, No. 09-1683, 2010 WL 147925, at *6 (D.N.J. Jan. 7, 2010) (complaint alleging defamatory statement to "third parties" dismissed). At the motion to dismiss stage, the plaintiff need not identify the precise defamatory statements made by the defendant, plaintiff "must only provide sufficient notice to [defendant] of the allegations made against [defendant]." *See Mangan v. Corporate Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (quoting *Cristelli v. Filomena II, Inc.,* Civ. No. 99–2862, 1999 WL 1081290, at *3 (D.N.J. Dec. 1, 1999)).

Here, Count Eleven sufficiently states a claim for defamation by asserting that Defendants spread and published false and damaging information accusing Plaintiff of inappropriate sexual interactions with minors in BOE meetings, emails, and social media platforms that place Plaintiff in a false light. (Compl. at ¶¶ 98-117, 224–234.) Plaintiff additionally contends that Defendants knowingly and recklessly continued to spread false information about Plaintiff despite being put on notice of the falsity of the information. (*Id.* at ¶ 226.) Further, Plaintiff alleges that the

information spread has been seen by third-parties including neighbors, students, and colleagues. (*Id.* at ¶¶ 227–229.) Although it is not required at this juncture, the Amended Complaint identifies that the alleged defamatory statements concerned Plaintiff having inappropriate sexual interactions with minors. (*Id.* at ¶ 225.) The Complaint sets forth that such false statements caused reputational harm and embarrassment to Plaintiff. (*Id.* at ¶¶ 230–233.) At this early pleading stage, these allegations are enough to plausibly plead a defamation claim.[7]

### iii. Count Twelve (Civil Conspiracy to Commit Tortious Interference with Contractual Relations)

To state a claim for conspiracy under New Jersey law, a plaintiff must plead (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, and (4) proof of special damages. *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, No. 14-3362, 2018 WL 585542, at *4 (D.N.J. Jan. 29, 2018). Here, Plaintiff has alleged that Defendants worked together to interfere with Plaintiff's employment reinstatement by holding BOE meetings and other "closed sessions" to discuss Plaintiff's employment status and seeking "public comments" concerning Plaintiff during Plaintiff's contract renewal process. (Compl. at ¶¶ 91, 98, 100, 118, 119.) Plaintiff alleges that Defendants' actions resulted in the denial of his accountant role. As such, Plaintiff's Complaint pleads sufficient facts to establish a civil conspiracy claim and thus Defendants' motion is denied.

---

[7] Defendants argue that there is a one-year statute of limitations for defamation, and therefore Plaintiff's claim for defamation is barred by the statute of limitations. (D.E. 9-2 at 27-28); N.J.S.A. 2A:14-3 provides that "[e]very action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." Defendants state that "the alleged defamation occurred by Defendants' actor Ruiz in June 2020 and [Plaintiff] filed his Complaint in October 2021 which is more than one year later." (D.E. 9-2 at 28.) However, Plaintiff contends that Defendants and their administrators, not just Ms. Ruiz, spread and published false and damaging information about Plaintiff for "the last two years." (D.E. 10 at 21.) Plaintiff filed suit on October 8, 2021. (D.E. 1.) Accordingly, Plaintiff's defamation claim can proceed subject to discovery, as it is unclear when the alleged defamatory statements were made. Any defamatory statements made before October 8, 2020 are barred by the statute of limitations. Statements that may have been made subsequent to October 8, 2020 may proceed.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:       Parties
          Edward S. Kiel, U.S.M.J.